MARTHA ERNST, EXECUTRIX, &c., OF HENRY ERNST, DE-
CEASED, RESPONDENT, *v.* THE HUDSON RIVER RAILROAD
COMPANY, APPELLANT.

*Contributory Negligence—Nonsuit—Question for Jury.*

A traveler approaching a railroad track crossing the highway is bound to
use his eyes and his ears so far as there is opportunity.

Negligence in the railroad company in omitting to give proper signals of the
approach of a train, will not excuse the traveler's omission to use such means
of avoiding collision. And where by such use of his senses the traveler
might avoid collision, his omission to do so is concurring negligence, and
should be so declared by the Court; where proof of this is clear the Plaintiff
(alleging injury by collision with the train) should be nonsuited.

But where it is doubtful, under all the proofs, whether the traveler did or
did not look up and down the track, and in other respects use ordinary care
and prudence, so that honest and intelligent men may reasonably differ in
their conclusions, the question whether the Plaintiff was negligent should be
left to the jury.

It cannot be said that it is the duty of a railroad company to place a flag-
man or display a flag at a street-crossing to notify travelers or foot passen-
gers of the approach of trains. Doing so may enable the trains to be properly
run at greater speed, and with less caution on the part of those who conduct
the train, but it is not a duty.

But the voluntary and uniform practice of the company to display such flag
at a particular crossing, generally known to persons using the street, may
render its omission a culpable neglect, unless increased vigilance and care in
the management of the train, or other precautions, furnished equivalent assu-
rance of safety.

CLERKE, J.—This action was brought to recover damages
against the Defendant for negligently causing the death of the
Plaintiff's testator, and has been tried four times. Upon the
first trial the Plaintiff was nonsuited. A new trial having been
granted, the cause was tried a second time, and the Plaintiff re-
covered $2,500, upon which judgment was entered. This was
reversed in the Court of Appeals, and a new trial ordered. On
the third trial the Plaintiff was nonsuited, in accordance with the
decision of this Court. This was affirmed at the General Term;

but, on a second appeal to this Court, the judgment of the Supreme Court was reversed, and a new trial ordered. On the fourth trial the Plaintiff had a verdict for $5,000.

The judgment upon this verdict having been affirmed at the General Term, the Defendant appeals to this Court.

The Judge at the trial charged the jury that the first question which they were to consider was, whether the Defendant was guilty of negligence which caused the death of the Plaintiff's testator. On this question there was conflicting evidence. The Plaintiff's witnesses, and some of the Defendant's, testified that they did not hear the bell or whistle previous to the accident; while the engineer, fireman, and track-master testified that these signals were given. So that the question relative to the Defendant's negligence was properly left to the jury.

The Judge added, that if they should come to the conclusion that the Defendant was guilty of negligence, then the question would be, was the deceased free from negligence which contributed to the accident?

The Defendant's counsel asked the Court to charge—" If the deceased, by the use of his ordinary faculties, could have discovered the train, and avoided the injury, he was guilty of negligence, and cannot recover," and this the Court accordingly charged.

The counsel for the Defendant moved, at the conclusion of the Plaintiff's evidence, for a nonsuit on the ground—" 1st, That there was no proof of negligence on the part of the Defendant;" and, " 2d, That it appeared that the negligence or want of care of the Plaintiff's testator contributed to the injury." The motion was denied; it was, however, renewed at the close of the whole evidence, and was then also denied. As I have already intimated, there can be no doubt that the question regarding the Defendant's negligence was properly left to the jury. The second ground of the motion for the nonsuit is more plausible, on the legal proposition which this latter question involves. I cannot discover any difference of opinion between any of the Judges by whom this case has been considered. All seemed to assume—at the trial, at

the General Term, and in the Court of Appeals—that the Plaintiff must make out a clear affirmative case of negligence on the part of the Defendant, unaccompanied by any negligence on the part of the deceased, that contributed to the injury; and the question now is, was the negligence of the deceased so obvious and uncontradicted by the evidence, as that nothing was left on this point for the consideration of the jury. I cannot find any substantial difference in the evidence bearing on this point adduced at the trial before the last, and the evidence adduced at the last trial.

There were some more witnesses examined on behalf of the Defendant. Their evidence, perhaps, tended to contradict that of the Plaintiff, but by no means made it more manifest that the Judge should have nonsuited the Plaintiff, on the ground of the uncontradicted negligence of the deceased.

At the last trial all the facts were proved which were proved at the one that preceded it; and these were very succinctly stated in the following synopsis contained in the opinion delivered by Judge Hunt, when the case was last in this Court:

" On the day in question the deceased drove his empty sleigh, with a pair of horses, into the village of Bath, intending to cross the ferry to Albany. The boat was not ready, and he fastened his horses in front of the tavern, and went in. In a short time notice was given that the boat was ready; his associates crossed over the track in their sleighs, one of them remaining near the track to assist the deceased, the others reaching the boat. The deceased came out, unhitched his horses, sat upon the bottom of his lumber sleigh, drove northerly a few feet, turned westwardly, drove one hundred and twelve feet toward the ferry, when he reached the railroad track, when his horses were struck by the engine and cars going southwardly, his horses killed, and himself so badly injured that he died within a few days thereafter. As he drove northwardly from the hotel he could see up the railroad a distance of thirty rods. After turning westwardly, toward the ferry, and going a short distance, the view of the road northerly was cut off by the station-house—a building extending about fourteen feet in a direction easterly and westerly. As the

deceased approached the train he was driving on a moderate trot; he was shouted at three times by a man standing on the steps of a store ·adjoining the. track, that the cars ·were coming, to which he paid no apparent attention. Whether he heard or understood does not appear. One of the railroad hands east of the track made motions to him, intended by the maker as signals to stop; and one of his own comrades (Simmons), on the west side of the track, made signs intended by him to effect the same .purpose. The deceased drove on at a moderate trot till he reached the track. The train, as one witness testified, was running at a speed of forty miles per hour, which would carry the train over the thirty rods. in about eight and a half seconds, and over fifty rods in about fourteen and one-sixteenth seconds. The deceased was a frequent passer at this place; and it had been the established custom there for some years, that a flag-man, with a white flag, should signal the approach of cars not *intended .to stop*, and with a red flag when the train was expected to stop."

On these same facts, which appeared on the. trial that we are now reviewing, we are now asked to decide that the Judge should have nonsuited the Plaintiff, when, by the decision rendered by this Court, on its last consideration of the case, it was held that the facts were sufficient to carry it to the jury.

No new proof has been given or withheld; no circumstances have occurred which could justify us for ·a moment to overrule the former decision. Nothing could justify this but a very palpable misapprehension of the facts, or a very palpable mistake of the law. At neither trial, indeed, was there any positive proof that the deceased directed his vision up or down the road. But may he not have done so ?—nay, do not the circumstances make it probable that he did so before he reached the station, which then obstructed his view ?

We have seen that as he drove northwards from the hotel, he could see up the railroad a distance of thirty rods; and then, seeing no approach of the train, nor anything indicating its approach, he ventured to cross. We are to infer from the verdict at the last trial that the jury decided that no whistle was sounded,

and no bell rung as the train approached the crossing. Now, if even there was positive proof that the deceased neglected to look up and down the track, would it be negligence in him not to have done so, in the absence of the customary and legally required signals? I am not aware that this Court has decided, or that there is a current of authority anywhere deciding, that when a railroad company neglects to give these signals, the want of ordinary care can be imputed to a person crossing the track, if he omits to look up and down just before he crosses. The absence of the accustomed signals is calculated to impart an assurance of safety, particularly to one who is in the habit of crossing the same spot frequently, and who perhaps has never before known of their omission. And can it be correctly alleged that he is guilty of negligence if he abates his usual vigilance under such circumstances?

I think it would not be unreasonable to recognize such negligence on the part of a railroad company as a proper element for the jury, in considering all the circumstances relating to the question on the part of the deceased. Any contributory negligence of a person attempting to cross, no doubt excuses the company, whether it does or does not use the required signals, or is, or is not, guilty of any other negligence. But I repeat, is it reasonable to impute negligence to a person who frequently, for years, is accustomed to hear signals, if he omits, on one occasion when they are withheld, to look up or down the road, immediately before crossing? At all events, there is nothing in the proof to show that the deceased neglected to look when his horses, on turning them round from the place where they were hitched, faced the north, and when he had an unobstructed view of the crossing, and of the railroad track for thirty rods north of it.

The fact that the witnesses failed to observe that he afterwards did not look up or down the track is not of itself certain proof of the want of ordinary care on his part.

In my opinion this Court, in its last review of this case, in no respect relaxed the salutary rules which it had in many previous cases adopted, in relation to the negligence of persons who are on

railroads. In neither of the opinions delivered on that occasion
is the rule ignored or modified, that when the injured person has
not used ordinary care, there can be no recovery against the
company.

They only in effect intimate, that what is want of ordinary
care is a question depending, for the most part, upon the facts
and circumstances of each particular case.

The last decision in this case (35 N. Y. R. 9) is not, I think,
at variance substantially with the legal propositions and deduc-
tions of the previous decision (24 How. P. R. 97).

The latter was based, evidently, on a mistaken statement of
the facts, which, if true, would have justified the Court in con-
cluding that the deceased was guilty of negligence. The real
facts, and the facts which were proved at the last trial, I repeat,
authorized the Judge to send the issues and evidence to the jury,
in conformity with the decision of this Court in its last review of
this case; and if he had not done so, the nonsuit would unques-
tionably be set aside.

The judgment should be affirmed, with costs.


WOODRUFF, J.—Without attempting to extend discussion in
a case which has been the subject of repeated and extended dis-
cussion already, I propose to state briefly the propositions to which
my assent is given—for, in my judgment, the case itself involves
rather the application of settled principles of law to the evidence,
than any serious contest about the principles themselves.

1st. That the Plaintiff was bound to prove that the Defendants
were guilty of negligence; and that an omission to ring the bell
or blow the whistle on approaching a road crossing is negligence,
is not disputed.

Whether, in this case, the Defendants did or did not ring the
bell was in dispute, and the testimony was conflicting. It was
therefore proper to leave that question to the jury.

2d. The charge of the Judge seems to assume that it was the
duty of the Defendants to keep a flag-man at the crossing, to give
notice of the approach of the train, and that their omission to do

so is, per se, negligence.   There is, I think, no such rule of law, and the Court would not be warranted in giving such an instruction to the jury.   It cannot be said, affirmatively, that any such duty rests upon the company.   No statute requires it.   The company have the right to run their trains carefully and prudently on the track which they are by law authorized to construct and use ; and if they do this, then it is the duty of those who have an equal right to use the highway at the crossing to avoid them, provided they give the warning prescribed by the statute.

In determining whether the company were duly and reasonably careful in the running of their trains, it is not necessarily enough, under all circumstances, that they give the statute-warning.   The rule of the common law, prescribing reasonable care in the exercise of their own right, that others also in the careful exercise of their own rights may not be injured, still rests upon them; and in special circumstances, where the danger to others is greater, as in cities or towns, the rule may require them to slacken their speed and move their ponderous engines with very great caution and circumspection, because they are so powerful for harm.   But, doing this, it cannot be said that they are also bound to place a man at the crossing, in addition to such care and caution.

True, if the company elect to do so, as they may for their own convenience, they will thereby render it proper to run with greater speed and less caution on the part of the managers of the train.   But the law does not require it, however stringent in requiring care in the management of the train itself.   But there is no exception to the charge in this respect.

Besides, the company, by their own practice, may make a law for themselves.   If they had an established and hitherto uniform practice on the subject, which was notorious and known to be so, then to withdraw the flag-man when their own conduct had justified the expectation of all who were in the habit of using the highway, that warning by the flag would be given, would be a neglect of suitable precaution, unless increased vigilance and care in the management of the trains, or the employment of other means, furnished equivalent assurance of safety.

3d. That if the testator was guilty of negligence contributing to the result, the Plaintiff was not entitled to recover, is not denied. This was so charged on the trial. The question is here, do the proofs clearly establish such negligence, so that the Court should have granted a nonsuit, or given a peremptory instruction to find for the Defendants?

Whatever I might conclude to be the preponderance of the evidence, the case seems to me one in which, upon this question, honest, intelligent, and impartial men may rationally differ. And if the doubts be such that such men, acting under a sense of great responsibility, and with a single purpose to arrive at the truth, may reasonably come to opposite conclusions, then it is proper to submit the question to the jury, and a nonsuit should not be ordered by the Court.

A traveler approaching a railroad track is bound to use his eyes and his ears, so far as there is opportunity.

Negligence in the railroad company in the giving of signals, or in omitting precautions of any kind, will not excuse his omission to be diligent in such use of his own means of avoiding danger; and where, by such use of his senses, the traveler might avoid danger, notwithstanding the neglect to give signals or warning, his omission is concurring negligence, and should be so peremptorily declared by the Court; and where proof of this is clear, the Plaintiff thus negligent should be nonsuited.

But where it is doubtful, as I think it is in this case, under all the circumstances testified to, whether the traveler did or did not look up and down the track as far as he could see it—whether, in the short distance he had to drive, he could, if he did look, see the approaching train—whether this train came into view (considering the speed at which it was running, according to the testimony of some of the witnesses) until the moment when he reached the station-house, where his view was necessarily obstructed —whether he was not misled by the failure of the company to show the flag, as they had been accustomed to do—whether the attempts made to stop him were not, under the circumstances, liable to misinterpretation, and might not be reasonably interpreted by

a cautious person to be intended as stimulants to hurry him forward, so as to reach the ferry-boat then in waiting, instead of warnings to stop; and so finally the question, whether he used ordinary care and prudence, becomes so complicated and involves so many details, that honest and intelligent men, acting without bias or partiality, in a single and sincere desire to determine according to the truth, may reasonably differ in their conclusions, then the question should be left to the jury.

For these reasons I concur in the results at which other of my brethren have arrived; viz. that the judgment should be affirmed.

BACON, J.—I concur in all respects in the foregoing opinion, and put my assenting vote for affirmance upon the same ground.

MASON, J.—I concur in this opinion in all respects, save that I prefer to express no opinion upon the question whether, under any circumstances, the railroad company should be required to place a flag-man at a road crossing.

All affirm, except GROVER, J.

Affirmed.