McCunn, J.
This action is brought for injuries sustained by the plaintiff, while riding as a passenger in defendants’ car,—a car which came in collision on the crossings just below the Cooper Institute, with a Harlem freight car, going up on the Fourth-avenue track.
The trial was had before Mr. Justice Monell and a jury, and resulted, in a verdict of two thousand dollars.
A motion was afterward made for a new trial, upon the case, before Mr. Justice Jones, who granted the motion, and now we are sent the record from special term to be inspected, and after such inspection we are to say which of the judges below has committed error.
0 After as close and fair an examination as some of . us are. capable of bestowing upon any subject, we have ■ arrived at the conclusion that the judge at special term was clearly wrong in setting aside the verdict of the jury ; and that, on the contrary, the case at circuit was correctly tried, and all questions of law properly disposed of.
It will be seen, after disposing of all minor points, ■ and after a careful examination of the facts, that the real .question in the case (and I must say I can see but one question), is whether there was. negligence on the part of the Third-avenue Road, and whether the ques-' *209 tioiT of such negligence was fairly submitted to be passed upon by the jury.
There is no dispute but that, at the time of the collision, 'the Third-avenue "car was going at an unusual rate of speed.
Indeed, this was expressly admitted by the defendants’ counsel on the trial, and there is just as little doubt, but the Harlem car was going slowly, not trotting or walking, but a slouching gait between the two.
It is also undisputed that by the uniform custom and practícelof the drivers and conductors of both railroads, the Harlem Company had the right of way.
Now the evidence on the part of the plaintiff goes to show that the Harlem freight car was much nearer the crossings, where the accident occurred, when they saw each other, than the Third-avenue car.
This being so, it was gross negligence on the part of the Third-avenue car not to stop until the Harlem cap-had passed.
Indeed, I fully agree with the plaintiff’s counsel that; the accident was the result of a reckless and wicked horse racing experiment on the part of the Third-avenue driver.
Dooley says, and he is a fair witness, that when lie-first discovered the Fourth-avemie car he should judge that he was one hundred and fifty or two hundred feet from it. He says, that some distance above the crossings the conductor came out and hurried up. t-lpe driver, who accordingly whipped his horses ; and on this .point he is not contradicted.
On the contrary he was corroborated in his statement by Morrill, by Remer, and by Pruden; and he says that in his judgment the forward part of the small car was struck.
Indeed, the learned justice, who tried;the case at circuit left every point as to which there was any possible. - doubt or dispute, or which could have any bearing, on the question of negligence* to the jury, and no.rule.is *210 "better settled than that which requires to have the issue of negligence submitted to the jury, when it depends upon conflicting evidence, or on inferences to be deduced from a variety of circumstances, in regard to which there is room for fair difference of opinion among intelligent men (Wolfkiel v. Sixth-avenue R. R. Co., 38 N. Y., 49; Ernst v. Hudson River R. R. Co., 35 N. Y., 9; 39 N. Y., 61). It will not be seriously urged that the negligence of the Harlem Company contributed to bring about the collision, and that such negligence is a bar to this action. In discussing this branch of the case I cannot do better than quote the language of Judge Grover, in the case of Clark v. Eighth-avenue R. R. Co., 36 N. Y, 138, where he says, “If the negligence of the defendant contributed to the injury, it is no defensejthat the negligent act of another contributed thereto, if the injury would not have occurred, but for the negligence of the defendant. The defendant, it is manifest, is only made responsible for the result of his own wrong. That wrong produced the injury; and although it would not have occurred, but for the wrongful act of another, that circumstance furnishes no excuse for the defendant, so far as an innocent party is concerned.”
There is no virtue in the point, urged by the defendants to the effect that a new trial on the ground of surprise ought to be granted upon the affidavits attached to the case.
The "evidence of Pruden was offered in rebuttal; and the defendants had no right to open the question again, if they had had a thousand witnesses present to contradict Pruden when he left the stand.
The new evidence, therefore, for the introduction of which a new trial is sought, is purely cumulative ; consequently there is no law for granting a new trial on the grounds presented (People v. Superior Court, 10 Wend., 285). Though a witness proves a fact to the surprise of the other party, .and though by mistake he *211 was not cross-examined nor was evidence given to contradict him, nor any observation made on his evidence, the court will not grant a new trial. Such was the rule held by Lord Eller borough in Bell v. Thompson, 2 (Chitty, 194.
Indeed, a verdict is never set aside to give the party an opportunity of impeaching the credit of witnesses sworn at a former trial (Bunn v. Hoyt, 3 Johns. 255). And to set aside a verdict when the testimony is conflicting, and the question doubtful, would be, not an exercise of discretion, but a gross usurpation of power. (Cothrane v. Collins, 29 How. Pr., 155). I fully concur with the learned justice who tried the cause, where he says, that “ The law in respect to the carriers of passengers holds them to the highest responsibility.”
They are required to exercise the utmost care, and to adopt all known and tested improvements calculated to secure the safety of passengers. Story says, “ passenger carriers bind themselves to carry safely those whom they take' into their coaches, so far as human care and foresight will go, that is, for the utmost care and diligence of very cautions persons.”
And this is the rule laid down in Bowen v. Central R. R. Co., 18 N. Y., 410; Deyo v. Central R. R. Co., 34 N. Y., 9; Maverick 9. Eighth-avenue R. R. Co., 36 N. Y., 381.
There is no virtue in the point raised by the defendants, to the effect that the plaintiff having been paid by the Harlem Company something, such payment has satisfied the claim against the defendants. The answer to such a proposition is, that no evidence was given of any release or receipt of money in satisfaction of damages, or of any written or verbal agreement or understanding to that effect. The court, ‘ after fully stating the law, charged the jury that what had been proven did not amount to a discharge of the Harlem Company, and was not, therefore, a defense to this action.
And in this we fully concur. The rule is well settled *212 that a release of one of several covenantors will not discharge his co-covenantors, unless it he a technical release under seal. A parol agreement to release will not have that effect (De Zeug v. Bailey, 9 Wend., 336).
The order at special term granting a new trial should be'reversed, and the judgment entered below ordered to stand.
Fithian, J. concurred.
Monell, J.
Was the verdict in this case against the clear weight of the evidence ? The theory of the defendants, were it the only theory in the case, and the theory upon which the case ought to have been disposed of, would give an affirmative answer to the inquiry.
The defendants’ theory is that the collission, so far as they were concerned, was unavoidable.
They claim that at the point where the car' of the Harlem company was first discovered by the driver of the defendants’ car, it was too late to brake up their car, or to avoid the collision; and they claim that the evidence, and their admission at the trial, goes no far-. ther than to establish that the accelerated speed of the horses was to carry the car out of danger, and not into it. But I think the error of the defendants’ counsel is in claiming that there was no proof of negligence on the part of the defendants, and no want of care before the car reached the point of danger.
Leaving out of view that there was evidence which would warrant the inference that the driver of the defendants’ car did see, or, had he been watchful and attentive to his duty, could have seen the approaching car on the other block in season to have escaped the danger (Wolfkiel v. Sixth-avenue R. R. Co., 38 N. Y., 49, 51),. there is much evidence, which, although contradicted, was proper evidence for the consideration of the jury ; and,- if credited by them, sufficient in its nature to predicate a verdict upon.
*213 At the point where the collision occurred, the tracks of the two railroads crossed each other at a very acute angle.
The distance between the extreme points of danger, as shown at the trial, is about sixty-five feet. That distance it was necessary to traverse on either track to pass out of danger, if the other track was being, or likely to be, used at the same time.- The grade at the crossing is ascending upward from Fifth to Sixth-street.
The defendants’ car was passing down, upon a descending grade, and the Harlem car up, upon the ascending grade. _The respective cars were of different size and weight. The defendants’ car was the smallest and lightest. It is well known that the crossing is in a somewhat crowded part of the city. The business and traffic of the Bowery passes at that point into the Third and Fourth-avenuesf It is also well known that several hundred cars daily pass the crossing upon either track, the average being, probably, one in each three to four minutes, until nine or ten at night. The drivers of the several cars, upon the one as well as upon the other line, must be presumed to know the condition of the thoroughfare, the frequent passing of cars, and the distance (by estimation, at least) between the point of danger at the crossing.
It is not, therefore, too much to say that in such a condition of things, a little more than ordinary care, it seems to me, ought to be exercised by each of these railroad companies. And it is not, perhaps, going too far to say that the mere fact of a car passing such a point going at the usual rate of speed, of say five miles an hour, in the night, when it is difficult to see far, should of itself be enough to impute negligence.
Prudence, and a rightful regard for the safety of passengers should not be balanced by the few seconds of time gained to a company, in going too rapidly over a place exposed to so great danger. «
There was evidence that the defendants’ car, for *214 some considerable time before it reached the crossing, was going at a rapid rate of speed. That the driver was told by the conductor to “hurry up”—that he was behind time. The rapid and unusual rate of speed of the' horses of the defendants’ car was testified to by several witnesses. One witness (Dooly) was on the front platform, and said he saw the Harlem car when the defendants’ car was from one hundred and fifty to two hundred feet from it, and that, when within fifteen to twenty feet, he jumped off1. Another witness (Remer) said the Harlem car was fifteen feet from the crossing ■when the defendants’ car was one hundred feet above, “ coming pretty fast on a downgrade,” "Another witness (Pruden) said the Harlem car was twenty-five or thirty feet, and the defendants’ car one hundred and twenty-four or one hundred and twenty-five feet from the place of collision when he first saw them. It was not disputed that the Harlem car was going at a slow rate of speed. Much of this evidence was contradicted. The driver of the defendants’ car stated that he was. only about thirty feet from the Harlem car when he first saw it. That his horses had just entered on the Harlem track; that he theh whipped up his. horses, hoping to avoid a collision, it being too late to retreat, and more dangerous to stop. He said, until he saw^the Harlem.car, he was going at his usual rate of speed; and in this he was corroborated by other witnesses.
Among other things submitted to the jury, "was this conflicting evidence, as to the speed at which the defendants’ car was being driven before it had reached the crossing, under the instruction that “if the car was driven at an unusual rate of speed, and by reason of such rapid speed the collision occurred,” the defendants were liable. There was no assumption, in this instruction, of a fact not proven ; and we have the right (if it were necessary) to presume that the jury founded their verdict solely on. this belief,—that, for some time previous to reaching the crossing, the defendants’ *215 horses had been driven at an unusually rapid, and, consequently, dangerous, rate of speed, which, they were told by the court, if it produced the collision, was negligence. The evidence to support such a conclusion was abundant if the jury believed it, and their verdict proves that they did believe it.
From the fact that at the time of the collision thg defendants’ car had passed over eighty-nine feet of the whole distance between the passable points of danger, the defendants insisted that in the position of the cars, at the point of collision, there was time, at the usual rate of speed of the respective cars, for the defendants’ car to have passed, if the Harlem car had not increased its speed. The diagram and the proof undoubtedly shows that the defendants’ car was within a few feet of being over the Harlem track ; and that fact might tend to establish that it had first entered upon the crossing, were it not that the rapid rate at which some of the witnesses say it was going, would enable it to get over the greater space in the shorter time.
I am not able to see anything in these facts going to prove that the driver of the defendants’ car could not, and, therefore, did not, see the Harlem car until too late to escape.
If there had been no evidence that he was driving rapidly, and the proof had been that the speed of the two cars was alike, then the position of the defendants’ car would justify the inference that it was first upon the crossing ; and having proceeded until the other car came in view, it was then too late to stop with safety. But the evidence is hostile to any such inference ; and if it was true that the defendants’ car was going very fast for some time before it arrived at the crossing, its having reached the opposite side of the Harlem track when the cars collided, is accounted for, and, therefore, whether the driver saw the Harlem car in season to stop, is not material upon the question of negligence. *216 The negligence was in driving too fast for safety at such a place.
The negligence of the defendants being the want of ordinary care to avoid the collision, it was competent for th'e jury to say that such negligence was the too rapid driving of the horses previous to, as well at, the time @f the collision, and the verdict being general, we cannot say that they did not adopt that theory.
Indeed, a careful reading of the whole evidence will, I think, produce the conviction that proper care on the part of driver of the defendants’ car, in approaching and driving upon and across the other track, would have saved the plaintiff and her fellow passengers from injury ; and it will be doing no injustice to the defendants to say that"there was evidence sufficient to justify the jury in finding that the driver saw the large car in time to brake up and avoid the collision, and was bound to-do so, and, in the language of the judge, “ he had no right to experiment or venture on the probability or possibility of crossing and avoiding the collision.”
Any concurring negligence on the part of the Harlem company, it is conceded, will not defeat a recovery against these defendants.
The rule now is, that if, upon the whole evidence, it would have been proper at the trial to have taken the case from the jury and directed a verdict, then the court will set the verdict aside, if found against what such a direction should have been (Suydam v. Grand-street, &c. R. R. Co., 41 Barb., 375).
The judge who tries the case is better enabled to judge of the weight and effect to be given to evidence ; and if one of the parties consider it so preponderating ’ in his favor that a verdict against him ought not to stand, it should be liis duty to move at the trial to have the verdict directed in his favor, and he should not afterwards be allowed to raise any question as to the sufficiency of the evidence for the first time on a motion *217 for a new trial; and for the same reason it is too late to object, on appeal, that contested questions of fact should have been passed upon by the jury.
Bút I am satisfied it would have been clearly erroneous to have taken the case from the jury; and, therefore, their verdict must be allowed to stand.
Approving of the views expressed by my associate upon the other questions raised by the defendants, I coucur in reversing the order appealed from, and in directing judgment to be entered on the verdict