### NASH *v.* NEW YORK CENT. & H. R. R. Co.

(*Supreme Court, General Term, Second Department.*   May 14, 1888.)

1. RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE—EVIDENCE.
   In an action against a railroad company for negligently killing plaintiff's intestate at a private crossing on defendant's track, where the intestate was driving with plaintiff, her husband, at the time of the accident, it is competent, upon the question of plaintiff's due care in crossing the track, to show that defendant had erected whistling posts, and was in the habit of whistling near the crossing, to plaintiff's knowledge, and that he listened for the warning before attempting to cross.

2. SAME—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
   In such case it appeared that an approaching train could with difficulty be seen or heard at the place of the accident, and that no signal was given. Plaintiff testified that he stopped about 75 feet from the track, and listened for the train, and the signal which was usually given, but did not remember looking through an opening in the trees about 200 feet from the track, where it could be seen for some distance. *Held*, that it was for the jury to say whether plaintiff was required to do more, and whether a failure to look through the opening showed want of due care.

3. SAME—DUTY TO GIVE SIGNALS AT PRIVATE CROSSINGS—EVIDENCE.
   While the law does not require a railroad company to give warnings at private crossings, yet if it establishes the uniform habit of giving such signal at a private crossing which is frequently used, such conduct justifies the expectation that the signal will be given, and a failure to give the signal is a proper fact for the jury to consider in passing on the question of the company's negligence.[1]

Appeal from circuit court.

George E. Nash, as administrator of Margaret A. Nash, deceased, brought this action against the New York Central & Hudson River Railroad Company for damages for causing the death of plaintiff's intestate. While the plaintiff was traveling in a large wagon drawn by two horses along a private lane leading from his house across the defendant's track to the public highway, his team was struck by a train, and destroyed, his horses killed, his wife killed, and himself severely injured. In a prior action brought for personal injuries to the plaintiff, and the destruction of his horses and wagon, the complaint was dismissed at the trial for want of proof to show the plaintiff free from contributory negligence, but upon appeal the general term reversed the judgment, and ordered a new trial; PRATT, J., delivering the following opinion, (DYKMAN, J., dissenting:) "PRATT, J. This is an appeal from a judgment upon dismissal of the complaint at the close of plaintiff's case on the ground of contributory negligence on the part of the plaintiff. The plain-

---

[1] On the general subject of the duty of railroad companies at crossings, see Railroad Co. v. Schuster, (Ky.) 7 S. W. Rep. 874, and note; Railway Co. v. Boozer, (Tex.) 8 S. W. Rep. 119; Railroad Co. v. Lee, (Tex.) 7 S. W. Rep. 857.

tiff was bound to show affirmatively that he was free from any negligence which contributed to the accident. But this naked legal proposition, when applied to facts upon the trial of a case, is liable to misapprehension where the case involves the conduct of an individual under such facts and circumstances as that honest men might differ as to the inference to be drawn whether the conduct was negligent or not. Then it is a matter proper to be submitted to the determination of the jury. We think it was a proper question for the jury in this case whether the plaintiff was guilty of contributory negligence, and that there was affirmative evidence that plaintiff exercised such care as an ordinary prudent man would have exercised under the circumstances. At a distance of 199 feet from the track, one looking through a vista in the trees may see the track a distance of 500 feet in the direction from which the train was coming. The plaintiff does not remember that he looked through this opening, and neither does it appear exactly where the train was at this time; but it does appear that no signals were given to warn persons of its approach. At a gate in the fence which it was necessary for plaintiff to pass through, 79 feet from the crossing, he 'stopped his team, and listened, and heard nothing.' At this point the track in both directions cannot be seen by reason of obstructions. He testifies, further, that he drove on down a steep decline to the track, and heard no warning till the horses struck the track, and the train was upon him. He says he was startled, and tried to urge his horses onward across the track; but the whistle blew, and his horses seemed paralyzed, and refused to go forward, and he then tried to twist them off to one side; but failed, and was struck. The plaintiff did take the precaution to stop his team at a distance 79 feet from the crossing, and listen for an approaching train; and it was for the jury to say whether, under all the circumstances, it was incumbent upon him to do more; and it was also a question for the jury, assuming that he failed to stop, and look through the opening in the trees, at a distance of 199 feet, whether such failure showed want of due care upon his part. He was driving a young and spirited team, the defendant's train failed to give any signals, and the track was so constructed that the sound of its approach was muffled, were all circumstances bearing upon his conduct proper for the consideration of the jury. There is no cast-iron rule requiring a person to turn his head both ways to see an approaching train, but every person is bound to take every reasonable precaution to avoid injury. If the train cannot by any possibility be seen, it is nonsense to say a party must look; but we may say that some other necessary precautions to avoid danger must be adopted. A jury might well say that stopping at the gate, and listening, without hearing any train, justified the plaintiff in driving towards the track. Considering the nature of the ground at that place, the obstructions to vision up and down the track, the speed at which the plaintiff and the train were going, a question is presented for a jury whether it was possible for the plaintiff to have seen the train in season to have avoided the collision. There is no question of law in this case requiring discussion. The nonsuit was granted upon the ground that it clearly appeared the plaintiff was guilty of contributory negligence, and this we think was error. Judgment reversed; new trial granted; costs to abide event."

Upon the trial of the present action by Nash, as administrator of his wife, plaintiff had a verdict, and defendant appealed from the judgment thereon. ·

*Ashbel Green*, for appellant. *Clarence R. Conger*, (*Seaman & Conger*, of counsel,) for respondent.

PRATT, J. This is an appeal from a judgment entered upon a verdict in favor of the plaintiff, and from an order denying a motion for a new trial. The action was for causing the death of Mrs. Margaret A. Nash on the 2d of October, 1886, at a private railroad crossing upon a railroad managed by the defendant. At the last general term of this court, in an action by this same

plaintiff individually against the same defendant, growing out of the same accident, and involving the same facts and issues, we held that it was a proper case for submission to the jury. The facts have not been materially changed by the trial in this case; and it follows that, if we were right in thus deciding the previous case, this case must be affirmed, unless there is some exception raising a new question. We will briefly notice the exceptions. It was certainly competent to show that the defendant had erected whistling posts, and was in the habit of whistling, near this crossing, upon the question whether the plaintiff, under all the circumstances, exercised due care. It was extremely difficult for a person approaching this crossing to see a coming train. Besides, the track was so constructed as to muffle the sound of a running train. The plaintiff testified that he stopped about 75 feet away from the track, and listened to ascertain if any train was coming. If it had been the universal custom to give warning at this place, and that was known to the plaintiff, it was material for the jury to know this fact in order to judge properly of the conduct of the plaintiff. It was also a question for the jury as to defendant's negligence. While it is true there is no law making it obligatory upon a railroad company to give warning except at public crossings, yet they may make a law for themselves. If such company establish a uniform practice to give a signal at a crossing, although private, but frequently used, and such practice is notorious, such conduct justifies the expectation of those having occasion to cross that such warning will be given; and a failure to give the accustomed warning is a proper fact for the jury to consider in passing upon the question of the defendant's negligence. *Ernst* v. *Railroad Co.*, 39 N. Y. 61; *Cordell* v. *Railroad Co.*, 64 N. Y. 535. It was also proper to permit the witness Nash to explain his testimony given upon a former trial, as the defendant had read extracts from this testimony. The other exceptions relate mainly to the charge of the judge. The whole charge, taken together, was as favorable to the defendant as the facts warranted. No error is pointed out sufficient to warrant a reversal of the judgment. The main exception in the case was to the refusal of the judge to grant a nonsuit at close of plaintiff's case. This exception brings up all the issues in the case. Upon this subject we refer to the opinion filed in the previous case, and, upon that opinion, overrule the exceptions herein. Judgment and order denying a new trial affirmed, with costs.