The plaintiffs' intestate, John A. Shoemaker, on the 26th day of August, 1896, at about seven o'clock in the evening, but while it was still broad daylight, in attempting to cross the single track of the defendant's main line of railroad near its station at South Columbia, Herkimer county, was struck by defendant's fast passenger train and killed.
In view of the verdict in favor of the plaintiffs and the affirmance by the Appellate Division of the judgment entered thereon, the appeal brings before us but the single question whether upon the undisputed evidence touching the intestate's action upon that occasion, it was error for the trial court to *Page 24 
permit the jury to find that the intestate was free from negligence contributing to his own death.
This situation is presented by the uncontradicted evidence.
The plaintiffs' intestate, Shoemaker, was a farmer, fifty-two years of age, in good health and entirely familiar with this crossing. The crossing was formed by a single track of the defendant's main line of railroad running northerly and southerly over the highway at nearly right angles. Shoemaker was seated upon a milk can in an open wagon drawn by a single horse, old and slow, which he was driving. His horse was either walking or slowly jogging along. As he was nearing the crossing the defendant's passenger train was approaching it from the north at a speed of from forty to fifty miles an hour. The defendant's passenger and freight station was also to the north of him, the end next to him being about thirty feet from his right hand. This station was 76 feet long and 20 feet wide, parallel to the main track, its front side fifteen and one-half feet distant from the rail next to it. A bay window projected three and one-half feet from about the middle of the front. We must assume that without fault of his own the intestate did not see or hear the approaching train until he had nearly passed the south end of the station. He was warned of his danger by the shouts of a man and boy, but we must assume he did not hear them. When the head of his horse was within six feet of the rail next to him he was seen to look toward the coming train, which, from his position, looking past the corner of the station and the projecting bay window he could then see rapidly approaching, probably about 200 feet from the crossing. He rose from his seat, stood up, seemed as if about to jump from his wagon, but instead of doing so changed his lines from one hand to the other and struck his horse several times with his whip. His horse increased its speed somewhat and crossed the track, but not far enough along to take him out of the reach of the train. It struck and killed him.
The learned trial court charged the jury, the defendant's counsel excepting to the charge as inapplicable to the case, *Page 25 
that "Where one person without fault upon his part, through the carelessness of another, is placed in a position of imminent danger, the law does not exact from him the same cool and deliberate judgment which it would require from him if he had time to consider, and was placed in no peril. * * * If there were, for instance, open to him at that instant two possible causes of action, one to try to turn his horse around, or stop it and keep it off the track, and the other one to try and urge it across the track and get over before the train could strike him," then if the intestate used his best judgment in adopting the latter course it was for the jury to determine whether he was careless.
It is clear that the intestate was not in imminent peril, unless when he saw the near approaching train, he should refuse to stop his horse. He could and should have stopped then and there; if he had stopped he would not have been in apparent danger, whether he had remained in his wagon or had jumped from it and taken his horse by the head. The highway and adjoining ground for twenty-five feet upon each side of him was nearly level. He was not confused by other tracks, trains or engines. His horse was not restive. If he was absorbed in his own thoughts so as to be less than reasonably alert to the danger of the situation; if he underestimated the speed of the train, or overestimated the speed of his horse — or, all combined — it was his misfortune, not the fault of the defendant. The situation does not support the inference that it must have appeared to him that it was dangerous for him to stop where he was, but rather that he supposed that he could safely pass the crossing; thus he voluntarily — not under the coercion of other apparent danger, for which the defendant was in fault — took the risk. He could have made no serious comparison between the danger to be apprehended from the fright of his horse and from collision with the train.
The burden was upon the plaintiffs to show that their intestate acted with reasonable care under the circumstances. The charge of the trial court permitted such finding, but the evidence did not. The charge was inapplicable, and the verdict without support in the evidence. *Page 26 
The judgment should be reversed and a new trial granted, costs to abide the event.