(59 App. Div. 168.)

## DE JONG v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department.    March 8, 1901.)

RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.
> When plaintiff saw defendant's train, it was 600 feet from a highway crossing with which he was familiar, and his horse, which was then going slowly, was 60 feet from the track on which the train was approaching; and though he could have stopped when he saw the train, and remained in that position with safety until it passed, he attempted to cross, and was struck by the locomotive. *Held*, that he was guilty of contributory negligence, as a matter of law.
> Woodward, J., dissenting.

Appeal from trial term, Rockland county.

Action by Benjamin De Jong against the Erie Railroad Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed.

For opinion on former appeal, see 60 N. Y. Supp. 125.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-BERG, JENKS, and SEWELL, JJ.

Henry Bacon, for appellant.

Arthur S. Tompkins, for respondent.

SEWELL, J.    It appears that the plaintiff was a butcher, and in the prosecution of that business drove a wagon three or four times a week for three or four years prior to the accident between Nyack and Tappan.    The highway between these places is crossed by the tracks of the defendant about 500 feet from the Sparkill station. On the day of the accident, as the plaintiff approached the crossing, and when about 25 or 30 feet from the first or switch track, he stopped his horse, looked and listened, but did not hear anything,—neither whistle, bell, nor the sound of the approaching train, which he knew was due about that time.    It appears that there were three tracks at this crossing.    The first was the switch track, the second was the track used by the trains to New York, and the third was the track for trains from New York, with one of which trains the plaintiff came in collision.    After stopping to listen, and hearing no sound of the train, the plaintiff drove towards the tracks; and, as his horse came upon the first or switch track, he looked to his right, and saw the train approaching from behind the tool house, 600 feet from the crossing.    The plaintiff describes what he then did as follows:

"I tried to cross over the railroad track. I made the horse go. I said, 'Gid-ap, gid-ap.' I made her go fast,—so fast as I could. I started her up, and made her go as fast as I could across the track. I see I couldn't get over, and I turned the horse right on the side. The horse was near the third track, and that was the track the engine and train were coming on. I mean to say that I was so close I couldn't get over ahead of them. The horse was struck by his shoulder,—on the right side from the shoulder,—the wagon was broken to pieces, and I was thrown out."

The accident occurred about 1 o'clock in the afternoon of a bright and clear day.    The evidence is that from the center of the road, 150 feet from the crossing, there was an unobstructed view down

the track 680 feet, at 100 feet a train could be seen 720 feet from the crossing, and at 60 feet it could be seen 777 feet away. It also appears that at any point on the highway within 150 feet of the crossing the plaintiff could have seen down the track 680 feet or more, if he had looked. It appears that, after the plaintiff stopped and looked, the horse walked the 25 or 30 feet distance to the switch track, and that the plaintiff did not look again until he reached it, when he says he saw the train for the first time, behind the tool house.

The whole proof, and all the inferences from it, point clearly to. the plaintiff's own negligence as one of the causes contributing to the accident; and as Patterson, J., said in Crowley v. Railway Co., 24 App. Div. 101, 103, 48 N. Y. Supp. 863: "Unless the question of contributory negligence has ceased ever to be a question of law, it was one in this case." The most ordinary care and prudence on the part of the plaintiff would have prevented the accident. He saw the train more than 600 feet away. His horse was on the switch track, 60 feet from the one upon which the train was approaching; and, if he could not have backed or turned around,—and no sufficient reason is suggested why he could not,—he could have stopped his horse and remained in that position until the train had passed. He had no right to assume, as he evidently did, that he could drive 60 feet before the train could go 600 feet. The horse was under the control of the plaintiff, and, if it had not been, made to go as fast as it could, it is highly probable that the accident would not have happened. The jury was not justified in finding that the defendant lured the plaintiff into a place of great peril, for when the plaintiff saw the approaching train he was 60 feet from the track upon which it was running, his horse was going slowly, and it does not appear that any danger was to be apprehended from its fright. He was not in imminent peril, and as said in Getman v. Railroad Co., 162 N. Y. 21, 23, 56 N. E. 553:

"He could and should have stopped then and there. If he had stopped he would not have been in apparent danger, whether he had remained in his wagon, or had jumped from it and taken his horse by the head. * * * The situation does not support the inference that it must have appeared to him that it was dangerous for him to stop where he was, but, rather, that he supposed that he could safely pass the crossing; thus he voluntarily—not under the coercion of other apparent danger for which the defendant was in fault—took the risk. He could have made no serious comparison between the danger to be apprehended from the fright of his horse and from collision with the train."

The plaintiff's familiarity with the tracks and crossing precludes the idea that he was confused or in any way deprived of his cool and deliberate judgment, and that he was not off his guard or distracted by any act of the defendant appears by the evidence:

"I am perfectly clear now that before I got on any further than the first track I saw the train. The horse was on the first track. I had to cross over the first track, and then the space between the first track and the second track, and then the second track, and then the space between the second track and the third track, before I got to the track the engine was on. During the whole of that time I saw the train. During all the time I was going over the two tracks and the spaces between them, I saw the train approaching.

I saw it was getting so close that I could not get by, and then I pulled hard to the left, and that turned my horse in the same direction the train was going."

The plain and only inference from the undisputed facts seems to be that the plaintiff either underestimated the speed of the train or overestimated the speed of his horse. In any event, he knowingly exposed himself to the peril of the very accident which happened to him.

It follows that the judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur, except WOODWARD, J., who dissents.