### McSWEENEY et al. v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department. April 22, 1904.)

1. RAILROADS—CROSSING ACCIDENT—NEGLIGENCE.
    Where defendant maintained a stationary signal bell at a crossing,
    which, when it operated properly, would ring on the approach of a train
    when it was about 1,300 feet distant, but at the time of an accident at the
    crossing the bell was out of order, and did not ring, and no warning
    whatever was given of the train's approach, such facts constituted evi-
    dence of defendant's negligence.

2. SAME—CONTRIBUTORY NEGLIGENCE.
    Where, in an action for death, caused by a collision at a railroad cross-
    ing, plaintiff's intestate and his companion were both killed while driving
    across the track, and the only witness who testified to having seen the
    buggy prior to the very moment of collision stated that it did not stop
    while approaching the track, but only slackened speed, and, if deceased had
    looked, he could have seen a train approaching from the direction of the
    train which struck him when it was 626 feet from the center of the cross-
    ing, and again, when deceased was 23 feet from the crossing, at a distance
    of 106 feet, the evidence was insufficient to show that decedent was not
    guilty of contributory negligence.

Appeal from Special Term, Orange County.

Action by Patrick B. McSweeney and another, as administrators
of the estate of Thomas McSweeney, deceased, against the Erie Rail-
road Company. From a judgment dismissing the complaint at the
close of plaintiffs' evidence, and from an order denying plaintiffs' mo-
tion for a new trial, they appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS,
WOODWARD, and HOOKER, JJ.

Claude Gignoux (Thomas Watts, on the brief), for appellants.
Henry Bacon, for respondent.

¶ 1. See Railroads, vol. 41, Cent. Dig. § 974.

WILLARD BARTLETT, J.   The plaintiffs' intestate was killed by one of the defendant's trains while endeavoring to cross the Erie Railroad at Otisville, in Orange county, at about a quarter past 5 o'clock on the afternoon of August 28, 1902.   He was in a buggy drawn by a single horse, and was accompanied by a lady, who was also killed.   The evidence does not disclose who was driving.   A heavy rainstorm, accompanied by thunder and lightning, had prevailed during the afternoon, and was not yet over, although its violence had somewhat abated at the time of the accident.   The top of the buggy was up, and the side curtains were drawn down.   The train which collided with the buggy was bound east, and was running at a rate of from 50 to 60 miles an hour.   There is a descent of 15 feet on the road along which the deceased approached the crossing between a point 235 feet distant from the railroad and the railroad tracks.   Ten feet of this descent is within 150 feet of the railroad.   Near the point where the accident occurred, which is known as "Cadwells' Crossing," the defendant, before and at the time of the accident, maintained a stationary signal bell, which, when it operated properly, would ring upon the approach of a train when the train was about 1,300 feet distant.   This signal appears to have been out of order on the day when the plaintiffs' intestate was killed, and failed to ring upon the approach of the train which struck the buggy.   There was abundant other evidence from which a jury might have found that no warning whatever was given of the train's approach; and, if the dismissal of the complaint was based solely upon the proposition that there was no proof of the defendant's negligence, I do not see how it could be sustained.   On the other hand, a careful reading of the record compels the conclusion that the plaintiffs failed to show that their intestate was free from contributory negligence on his part, either by direct evidence or by inferences fairly deducible from the facts proven. The only witness who testifies to having seen the buggy prior to the very moment of the collision was one Joseph B. Conklin, who was in a house upon the roadway down which the deceased was driving.   The material parts of his testimony are as follows:

"At the time of the accident I saw this carriage coming down the street. I did not see anything except that I saw the carriage coming down and the train strike it.   The horse was walking at the time it was struck.  * * * There had been a very fine coaching parade, and then a very heavy thunder storm.   The storm was still raging when this accident occurred.   It was a very unusual storm—it had been; was somewhat better.  * * * William De Witt was with me at the time I noticed this horse and wagon.   He called my attention to it by some remark that these people would get caught if they did not look out.   I would not have noticed them if he had not called my attention to them.   For some reason I understood that he was apprehensive that they would be struck by the train, and I began to look at them.   That was perhaps 150 feet from the track when I first noticed them; at the top of the hill, about.   From that point on I watched them until the crash came—until they were struck.   In going that distance they did not stop at any point from that 150 feet where I first noticed them until the collision.   I am not positive that they continued on at the same gait they were moving when I first noticed them.   They might have been going slower.   I think probably, when I first noticed them, they were trotting.   Mr. Bacon:   You think they were walking when they went over?   The Witness:   Yes, sir.   He did not stop at

any point from the 150 feet until the point of collision. He did not stop in my sight. I was watching them all the while. * * * It was a top buggy, I think, with the side curtains on."

There was also evidence that at a point on the highway over which the deceased was approaching he could have seen a train coming from the direction of the train which struck him when such a train was 626 feet from the center of the crossing. The next point at which the train would become visible was 23 feet from the crossing, when it could have been seen at a distance of 106 feet.

From the testimony which has been quoted it will be observed that there is no evidence whatever of the exercise of any degree of care on the part of the persons in the buggy, unless it is to be found in the statement that the gait of the horse was decreased from a trot to a walk as the buggy approached the track. Mr. Conklin does not say that he saw either of the occupants of the vehicle, so that we are left wholly in the dark as to what they actually did, except to reduce the speed of the horse. The exercise of due care required the deceased, under the circumstances, to look and listen for an approaching train; and the mere fact that the stationary signal bell was not ringing did not relieve him of the imputation of negligence if he failed to exercise this degree of care. Rodrian v. N. Y., N. H. & H. R. R. Co., 125 N. Y. 526, 26 N. E. 741. "In case of a death accident at a railroad crossing," says Andrews, J., in the case cited, "it must often happen that the circumstances immediately preceding it and the acts and conduct of the deceased are left in great obscurity. But the rules of law governing the right of recovery are the same as in other cases, although slighter evidence of compliance with the duty cast upon a plaintiff might be deemed sufficient than where the injured person was alive and competent to testify." While the absence of contributory negligence need not be established by direct evidence, but may rest upon inferences properly drawn from the surrounding facts and circumstances, an inference of due care cannot be based solely upon the presumption that the person whose life is exposed to danger will adopt proper means to protect himself. Such is the established rule in this state. Wiwirowski v. L. S. & M. S. R. Co., 124 N. Y. 420, 26 N. E. 1023. A different rule prevails in the federal courts. See Baltimore & Potomac R. R. Co. v. Landrigan, 191 U. S. 461, 24 Sup. Ct. 137, 48 L. Ed. ——. In the present case, unless we are prepared to say that the mere change in the gait of the horse from a trot to a walk as the buggy approached the crossing warrants the inference that the deceased looked and listened for the approaching train, it is manifest that the plaintiffs failed to sustain the burden which the law put upon them of establishing freedom from contributory negligence on the part of the deceased. In my opinion, the fact proved does not justify the inference necessary to make out the plaintiffs' cause of action. A momentary halt within 23 feet of the track, or a glance, when the buggy reached that spot, in the direction from which the train was approaching, would have averted the accident. To my mind, the evidence indicates that the occupants of the buggy drove onto the crossing confident in their safety because of the silence of the sta-

tionary signal bell, and without the observance of that care which the law imposed upon them notwithstanding the omission of the signal.

For these reasons I think the judgment should be affirmed.

Judgment and order unanimously affirmed, with costs. All concur.