was filled up, the water broke through and flowed in a southwesterly direction through the plaintiff's land until it joined the former channel, near the southerly end of plaintiff's premises, excavating the soil, tearing up rocks and stones, and finally washing out a part of a stone wall which was the south boundary of plaintiff's farm. Afterward that portion of the new channel caused by the rapid flow of the water across this lot was filled in by the defendant with hardpan, and since that time has not been tillable soil.

It appears that immediately north of the railroad embankment there is an extensive watershed, and this box culvert is the only outlet for it since the damming up of the former channel. The jury might have found from the evidence as it stood at the time of the nonsuit that, if the channel north of the embankment had remained in the condition it was before the box culvert was constructed, all the water would have flowed along through this channel and the stone culvert, which was much larger than the box culvert. The sliding of the dirt from the embankment, filling up the southerly artificial ditch on the defendant's right of way, and which was a substitute for the channel dammed up, tended to divert the water, turning it southerly upon the plaintiff's premises. While the description of the different channels is somewhat involved, we think there was evidence of a substantial diversion by the defendant of the course of the stream and of the filling up of the new channel, and the overflow of plaintiff's premises may have been found to result therefrom. The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment reversed and new trial granted, with costs to the appellant to abide the event. All concur, except McLENNAN, P. J., who dissents, and HISCOCK, J., not voting.

---

(98 App. Div. 349)

COLEMAN et al. v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1904.)

1. RAILROADS—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

In an action for the killing of plaintiffs' intestate at a railroad crossing, the burden is on the plaintiffs to prove by a fair preponderance of the evidence that their intestate was free from negligence contributing to the accident.

2. SAME—EVIDENCE.

Deceased, while riding a bicycle not faster than a walk over a railroad crossing, on which defendant operated four railroad tracks, was killed as he was about to cross the last track. He looked both ways before crossing the first track, and then went 40 feet across the intervening tracks without taking any precaution to ascertain whether a train was approaching on the last track, though he knew it was used for through traffic, and that a train was due thereon. If he had looked or listened as he went on the third track, 12 feet distant from the track on which he was struck, he could have discovered the train and avoided the accident. Held, that deceased was guilty of contributory negligence precluding recovery.

Spring and Hiscock, JJ., dissenting.

¶ 1. See Railroads, vol. 41, Cent. Dig. § 1121.

Appeal from Trial Term, Erie County.

Action by Eugene J. Coleman and another, as administrators of the estate of James Coleman, deceased, against the New York Central & Hudson River Railroad Company. From a judgment in favor of plaintiffs, defendant appeals. Reversed.

The action was commenced on the 30th day of July, 1903, to recover the damages sustained by the next of kin of James Coleman, deceased, because of his death, which occurred on the 20th day of May, 1902; resulting from being struck by the engine of a passenger train of the defendant while crossing Thompson street, in the city of North Tonawanda, N. Y., alleged to have been caused solely by the defendant's negligence.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Charles A. Pooley, for appellant.
Daniel V. Murphy, for respondents.

McLENNAN, P. J. Upon the whole evidence the jury were justified in finding, as they did, that the accident which resulted in the death of plaintiffs' intestate would not have happened except for the negligence of the defendant in the operation of the train in question, and that on account of his death the next of kin sustained damages to the amount of the verdict. None of the exceptions taken to the rulings of the court in the admission or exclusion of evidence, to the charge, or to the refusal of the court to charge as requested, present reversible error. The only remaining question to be considered is whether or not the plaintiffs proved by a fair preponderance of evidence that their intestate was free from any negligence which contributed to the accident. That burden, which the law imposes upon the plaintiffs, we think they failed to sustain in this case, and for that reason the judgment and order appealed from must be reversed.

The defendant was engaged in operating a railroad in the city of North Tonawanda, N. Y., which at the place in question consisted of four tracks extending north and south substantially at right angles across Thompson street, located in what is called the "Lumber District," a considerable distance from the business center of the city. The most easterly of the tracks is a siding designated "No. 1." The track immediately west, on which trains going north are run, is No. 2. The one next west is No. 3, and called the "middle track." The most westerly track is No. 4, and upon it southbound trains are run. The distance from the westerly rail of track No. 4 to the east rail of track No. 1, on Thompson street, is about 44 feet, and is solidly planked in the center between the tracks and rails to a width of 32 feet; the street being 66 feet wide. East of the railroad and north of Thompson street there was a building, the westerly line of which was 22 feet from No. 1, or the easterly track, and extends to within 11 feet of the northerly line of the street. At the time of the accident there was standing on track No. 1 a part of a freight train, the end of which was about 66 feet from the northerly end of the planking. On track No. 2 there was a switch engine standing at about the same distance north of Thompson

street, and from it smoke and steam were being emitted. On track No. 3, or the middle track, there was a line of freight cars which extended from a point 3 feet 6 inches from the north end of the planking for a considerable distance to the north. The fourth or main south-bound track was clear, as were all the tracks south of Thompson street, except that there was a light engine upon one of them approaching the crossing between 600 and 700 feet distant. It will thus be seen that Thompson street, for a width of at least 35 feet, was entirely unobstructed, and that to the north of the street for a distance of 60 feet from the street there was nothing to obstruct the view except the freight train which was upon track No. 3, the end of which was within 3½ feet from the planking at the crossing, and to the south of the street there was nothing to obstruct the view from the street nearer than 600 or 700 feet.

Plaintiffs' intestate, who was about 54 years of age, bright, active, and in the possession of all his faculties, whose place of business was on Thompson street, about 200 feet east of the crossing, and who was entirely familiar with it and the movement of the trains thereon, having passed and repassed it several times daily, left his office at about 1:30 o'clock on the afternoon of the day in question to go to a point west of the railroad, which necessitated crossing defendant's tracks. He rode a bicycle, with the use of which he was familiar, rode at a gait not faster than an ordinary walk, was on the southerly side or edge of the planking, and as he reached the first or easterly track he was seen to look each way. He then proceeded westerly along the southerly edge of the planking, but did not afterwards look in either direction, but proceeded with his head down until he reached the fourth or south-bound main track, when a passenger train approaching the crossing from the north at the rate of 20 or 30 miles per hour struck him, and carried himself and wheel along in front of or by the side of the cowcatcher for a distance of 50 feet, when he was thrown and injured in such a manner that he died within a few minutes thereafter. At the time there was no storm. It was a bright, clear day. There were no vehicles upon the street. There was no noise in the vicinity, except such as might be made by steam escaping from the engine which stood on track No. 1, about 60 feet north of the crossing. The deceased rode a distance of at least 40 feet across three of the tracks and onto the fourth track, upon which he knew trains were liable to pass at any time, without taking any precaution to ascertain whether or not a train was approaching.

We have assumed that the defendant was negligent in running its trains at the rate of 20 or 30 miles per hour at the point in question, when a freight train which would obstruct the view as it approached from the north was standing within three or four feet from the planking at the crossing; but we fail to discover any evidence in the record which indicates that the deceased might not have discovered its approach in ample time to have enabled him to stop before going upon the track in front of it, if he had been paying the slightest attention—if he had looked or listened. The fact that plaintiff's intestate looked both ways just as he was going upon the

first track, and when he was 40 feet distant from the fourth track—the only one upon which trains were expected to approach from the north—did not establish his freedom from contributory negligence. Just as he was going upon track No. 1 his glance to the south assured him that no danger was to be apprehended from that direction, because, as we have seen, there was no train or engine nearer than 600 or 700 feet from him on that side of the street. Likewise by looking to the north he observed no danger from trains approaching, except on the fourth or south-bound main track; all the cars and the engine upon the other tracks on that side being stationary. He knew that it was the regular time for the south-bound passenger train to pass, but without giving any further heed he proceeded a distance of 40 feet, going at a leisurely gait, no faster than an ordinary walk, his wheel under perfect control, with nothing to distract his attention, and, without making any effort to ascertain whether or not it was safe, went upon track No. 4, and was struck by the south-bound train. While riding near the southerly edge of the planking when he reached the east rail of track No. 3, which is 12 feet from the east rail of track No. 4, if the deceased had looked past the southwest corner of the car standing on track No. 3 he would have had an unobstructed view of track No. 4, on which the south-bound train was approaching, of at least 70 feet from the point where he was struck, and as he proceeded his view of that track to the north was correspondingly increased, so that if the deceased was traveling at the rate of 4 miles per hour (an ordinary walk), and the train was going six or seven times as fast (25 or 30 miles per hour), the engine of the approaching train was in full view when the deceased was 12 feet away from the east rail of track No. 4, and continued in plain view while he passed over the distance of 12 feet and went in front of the engine. At the rate of speed he was going, he could have stopped or turned his wheel almost instantly, had he observed the approaching train, and thus have avoided collision with it. It appears that the deceased's sense of hearing was perfect, and it is inconceivable that he could not have heard the rumble of the approaching train if he had listened.

This is not a case where the traveler approaching a railroad track is confronted with several dangers, which attract his attention, and which he is seeking to avoid, or where there are moving trains or vehicles or other noises which would tend to prevent him from hearing a train's approach; but, on the contrary, the evidence establishes that, if the deceased had looked and listened, he could have discovered the approach of the train in time to have avoided coming into collision with it.

It is hardly useful to refer to the authorities which point out the duty of a traveler upon a highway in approaching a railroad crossing, and which indicate what is necessary for him to do in order to relieve himself from the charge of contributory negligence. Such duty in almost every case must be determined by the circumstances surrounding it, and it is difficult to formulate any rule of general application. One such rule, however, was stated in

Fowler v. N. Y. C. & H. R. R. R. Co., 74 Hun, 144, 26 N. Y. Supp. 220, as follows:

"The duty of looking and listening when one approaches a crossing of many tracks does not seem to me to be adequately discharged by merely looking as the dangerous point is approached, and then, when it is absolutely reached, going blindly forward."

That rule has been repeatedly cited with approval in the more recent cases.

In Cordell v. N. Y. C. & H. R. R. Co., 75 N. Y. 330, the court said:

"The deceased would have seen the train when two steps from the track. If he had looked and stood still, he would have been safe. He would certainly have been safe if he had stepped backward instead of forward. There was nothing to prevent him from arresting his progress to the fatal spot, and the consequences of his death should not be visited upon defendant, whose carelessness, if any, was certainly no greater than his."

In the case at bar the evidence conclusively establishes that if the deceased, as he went upon the third track, a point 12 feet from the track upon which he was struck by the approaching train, had either looked or listened, he could have discovered it and avoided the accident. He did neither, but went forward to the fatal spot, totally oblivious of danger. It is common knowledge that a train going at the rate of speed the train in question was going as it approached the crossing makes a noise which could have been heard by the deceased if he had given attention, unless there were other noises in the vicinity which would prevent. In this case the evidence shows that there was nothing which would prevent him from hearing the noise of the approaching train, had he listened.

The evidence wholly fails to point out any excuse on the part of the deceased for going a distance of 40 feet across the defendant's tracks, and upon track No. 4, without taking any precaution or any means of ascertaining whether or not it was safe for him to do so; and it establishes that, if he had looked and listened, he would have discovered the approaching train, and could have avoided collision with it. The conclusion is reached that the plaintiffs wholly failed to prove that their intestate was free from contributory negligence. It follows that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur, except SPRING and HISCOCK, JJ., who dissent.