ted such culvert under the highway, of which he had exclusive control, to become so filled up and obstructed that the waters, which except for such obstruction would have passed through it, set back upon the premises of the plaintiff and caused the damages for which he complains. It seems to me clear that for such damages, resulting through the negligence of the commissioner of highways, the defendant is liable, precisely as if an injury had resulted to a traveler because of his failure to construct such sluiceway or culvert.

I think it is of no importance in this case that the learned county judge and the respective counsel during the course of the trial spoke of the negligence of the defendant town, rather than the negligence of the highway commissioner, as strictly should have been done. The statute imposing liability upon the town for the negligence of the commissioner was read to the jury, and no exception was taken by either party to the circumstance that the learned county judge spoke of the negligence of the town, when strictly he should have denominated the acts complained of as the negligence of the highway commissioner. We conclude that upon the conceded facts established by the evidence in this case the highway commissioner of the defendant was guilty of negligence which resulted in injury to the plaintiff, and that it (the defendant) was liable for such negligence; that no error was committed by the county judge, or, at least, such as should be regarded as sufficient to call for a reversal of the judgment. Our conclusion is that the judgment is right, that no error affecting the merits was committed in the course of the trial, and that it should be affirmed, with costs.

SPRING, J., concurs.

---

(109 App. Div. 449.)

FISHER v. CENTRAL VERMONT RY. CO.

(Supreme Court, Appellate Division, Third Department. November 15, 1905.)

1. RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.

   Where a person injured while walking across a railroad track had opportunity to look for approaching trains before crossing the track, his failure to do so was negligence on his part.

   [Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 1046, 1047.]

2. SAME—RELIANCE ON PRECAUTION OF RAILROAD.

   That a railroad company fails to give sufficient notice by whistle or bell of the approach of a train to a crossing does not justify a person in going upon the tracks at the crossing without looking to see whether a train or engine is approaching.

   [Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 1071-1074.]

   Chester, J., dissenting.

Appeal from Trial Term, Clinton County.

Action by James C. B. Fisher against the Central Vermont Railway Company for injuries received at a railroad crossing. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHES-
TER, and HOUGHTON, JJ.

Shedden & Vert (L. L. Shedden, of counsel), for appellant.
Gaylord T. Ames (John H. Booth, of counsel), for respondent.

CHASE, J. On the morning of September 24, 1904, the plain-
tiff was struck and seriously injured by the tender of an engine
which was being backed over a grade crossing at Rouse's Point, and
this action is brought to recover damages for such injuries; the
plaintiff claiming that they were wholly occasioned by the defend-
ant's negligence.

At the place where the accident occurred there are three tracks
extending nearly north and south. The three tracks are crossed
at grade by Pratt street, which runs nearly east and west. On each
side of Pratt street is a plank walk. The walks do not cross the
tracks at right angles, but extend north nearly one foot from a
right angle in every three feet going toward the east. The tracks
are numbered 1, 2, and 3 from the west. Tracks 1 and 2 are side
or switch tracks, for storing cars. Track 3 is the main track [from
Rouse's Point to Montreal. On the morning of the accident on
track 1 was an engine with several cars attached. The front of the
engine stood a little northerly of the south cross-walk. On track
2 was a detached mail car, the north end of which extended about
one-half across the south cross-walk, and north of the north cross-
walk was another detached car standing on track 2. The distance
between tracks 1 and 2 is about 7 feet 7½ inches, and the distance
between tracks 2 and 3 is about 6 feet 11½ inches. For several
years it has been the custom for the Grand Trunk Railway Com-
pany each evening to run a passenger train on track 3 to the station
at Rouse's Point, and then onto track 1, and, after detaching and
removing the engine, leave the cars there over night. On each
morning the engine is again attached, and the train is run north
on track 1 from Pratt street, and is backed up to the station on
track 3 a little north of Pratt street. It leaves Rouse's Point for
Montreal about 7 o'clock in the morning. It has also been the
custom of the Delaware & Hudson Company to leave detached
mail cars on track 2 substantially as they were on the morning of
the accident during each day until the evening train. The defend-
ant has a train which each morning comes from St. Albans and is
due at Rouse's Point at 6:15 in the morning. It backs into the
station north of Pratt street, and, after unloading passengers and
baggage, the cars are placed on a side track north of the station.
The engine is then uncoupled and run on track 3 to a turntable
south of Pratt street, where the engine is turned and where water
is taken therefor, and it is then backed north across Pratt street
and remains on the side track until the train is taken to the sta-
tion again, and it leaves for St. Albans at 9:55 a. m. Trains and
engines are frequently run over track 3, and plaintiff was familiar
with the place, and with the way cars are left on the tracks, and
with the running of engines and trains over said tracks. The plain-

tiff for about four years was employed in a factory east of the tracks, but lived in a house a short distance west of the tracks.

On the morning of the accident it was misty and a slight rain was falling. The plaintiff left the house, west of the tracks, a few minutes before 7 o'clock, stopped at a building west of the tracks, where he borrowed an umbrella, put it up, and, carrying the umbrella, followed a man who was a short distance ahead of him. The Grand Trunk Railway engine and train on track 1 was about to start, and the engine was letting off steam, blowing its whistle, and ringing its bell. Plaintiff, without waiting for the train to pass, ran around ahead of the engine and back onto the sidewalk between tracks 1 and 2, where he says he looked both ways and listened. He continued on the sidewalk in front of the mail car on track 2. He was walking at a speed of from 4 to 5 miles an hour, and did not either stop or slacken his speed. He says, as he passed the mail car and while between tracks 2 and 3 he looked to the north, and as he was about to step over the first rail of track 3 he turned to look to the south just as he was hit by the tender of the engine. There is a conflict in the evidence as to whether the engine which hit the plaintiff was blowing its whistle or ringing its bell. There was no point west of the place where the accident occurred, except after passing the mail car, where the plaintiff could see south on track 3 to determine whether a train was approaching. If he looked, when between tracks 1 and 2, it was unavailing and useless, because he knew and testified that he could not see south to discover a train at any point west of the place between tracks 2 and 3. The angle of the sidewalk crossing the tracks made him partially face the north, and, as the street at that point was about 62 feet wide, he could see, when back of the mail car, sufficiently far to the north to ascertain whether there was any danger from that direction. The rain was coming from the southeast, and he was holding his umbrella so as to protect him from such rain. The engine was going at from 10 to 20 miles an hour, and even at the maximum speed of the engine it did not go to exceed 4 or 5 times the speed of the plaintiff; and from the plaintiff's testimony it appears that when he passed from behind the mail car the tender of the engine must have been within about 20 feet of the sidewalk on which he was walking.

That the plaintiff looked for the engine after he was actually upon track 3 neither saved him from the accident nor was of any use to him as a precaution. There was no necessity for the plaintiff's continuing to look to the north until he had passed upon track 3. There was ample opportunity for him to look to the north when behind the mail car, and his failure to look south on track 2 before he passed upon the track in front of the engine was carelessness and negligence on his part. The mere fact that the defendant failed to give sufficient notice by whistle or bell of its approach to the crossing is not sufficient to justify a person going upon the tracks at a crossing without looking to see whether a train or engine is approaching. McSweeney v. Erie R. R. Co., 93 App. Div. 496, 87 N. Y. Supp. 836. Where a person is told to

cross the tracks of a railroad by an employé of the railroad company, or where the crossing is protected by gates and a gateman and the gates are open as an implied assurance that an engine or train is not immediately approaching, or where a train stops at a depot and no warning is given against passengers leaving the train to pass over another track to the depot platform, or where in any other manner a railroad company invites or suggests the crossing, the vigilance required of a person about to cross the tracks of a railroad is and ought to be materially relaxed.

The cases cited by the plaintiff to sustain his judgment are all distinguishable from this case, and mainly by reason of the fact that the defendant had done something to justify a relaxation of the rule that a person must not take the danger incident to crossing a railroad track at grade without exercising reasonable care for his own safety and protection. There are no peculiar facts in this case excusing plaintiff from looking to the south before he attempted to cross track 3. If he had slackened his speed so as to have given him more time to look, or even at the rapid gait at which he was walking if he had looked to the south at once after emerging from behind the mail car and after he had time and opportunity to look to the north, the accident would have been avoided. His apparent anxiety to get across the tracks and to protect himself from the rain led him to cross track 3 without taking the precautions that an ordinarily prudent man should have taken. His failure to look was negligence contributing to his injury. Thompson's Commentaries on the Law of Negligence, §§ 1637–1663; Reed v. Metropolitan Street R. R. Co., 180 N. Y. 315, 73 N. E. 41; Young v. N. Y., L. E. & W. R. R. Co., 107 N. Y. 500, 14 N. E. 434; Cordell v. N. Y. C. & H. R. R. R. Co., 75 N. Y. 330.

The judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur, except CHESTER, J., who dissents; and HOUGHTON, J., not voting, not being a member of this court at the time the decision is handed down.