LEGG v. ERIE R. CO.

(Supreme Court, Trial Term, Orange County.   February, 1910.)

1. RAILROADS (§ 348*)—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE—
   EVIDENCE—SUFFICIENCY.
      Evidence *held* to show plaintiff guilty of negligence contributing to his
   injury at a railroad crossing.
      [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1144–1149;
   Dec. Dig. § 348.*]

2. RAILROADS (§ 346*)—ACCIDENT AT CROSSING—LOOKING AND LISTENING—
   CONTRIBUTORY NEGLIGENCE.
      Where there was evidence that deceased looked before going on a rail-
   road crossing or when he was on the tracks, on the farther one of which
   the collision occurred, and if he did look he must have seen the train, it
   will not be presumed that he did not see it.
      [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1122; Dec. Dig.
   § 346.*]

3. RAILROADS (§ 327*)—ACCIDENT AT CROSSING—DUTY TO STOP, LOOK, AND
   LISTEN.
      One crossing a railroad at grade with the obvious danger that there is
   from approaching trains should be alert and should concentrate his
   thoughts and ascertain if he can proceed safely, for common prudence
   dictates that at such crossings one should look for oncoming trains.
      [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1043–1056;
   Dec. Dig. § 327.*]

Action by Sadie Legg, administratrix of Harry P. Legg, deceased,
against the Erie Railroad Company.  Motion at close of case to dis-
miss and motion to set aside verdict for plaintiff reserved.  Motions
granted.

Servin & Cox (A. H. F. Seeger, of counsel), for plaintiff.
Thomas Watts and Elbert N. Oakes (Henry Bacon, of counsel),
for defendant.

MORSCHAUSER, J.  The deceased was driving across a rail-
road crossing in the city of Middletown, when he was struck and
instantly killed by an east-bound passenger train of the defendant.
The accident happened at about 15 minutes before 7 on the morning
of April 15, 1909.  The deceased was about 28 years of age, phys-
ically well, and his senses of sight and hearing were good.  He was
a fish peddler by occupation, and for a period of five years had been
engaged in this business, and was located at the junction of Wickham
avenue and West Main street, about 3½ blocks from the place where
the accident occurred.  He conducted this business personally and
drove his own wagon, selling fish from house to house in the city
of Middletown and about the surrounding country.  Every Thurs-
day morning he would pass over this crossing a few minutes before
7 o'clock, as his route took him across this crossing.  Before he was
engaged in the fish business, he was employed by a Mr. Davis, who
conducted a meat market in Middletown.  While so employed by
Mr. Davis, he drove the delivery wagon.  The gates were only oper-
ated by the railroad between the hours of 7 a. m. and 11 p. m.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On the morning of the accident, about 15 minutes before 7 a. m., the deceased approached the crossing on West Main street, going in a westerly direction. The railroad tracks at this crossing lay substantially north and south. There are four tracks at this crossing, and the collision occurred on the east-bound main track. The first track approaching from the east is the coaling switch, the second is a long siding, the third is the west-bound main track, and the fourth is the east-bound main track. On this morning of the accident, it had been raining, but had cleared. There were no trains on the tracks running in any direction, nor had any passed just previous to the accident. So far as it appears as to the surroundings, when the deceased approached and arrived at the first or switch track, he had a clear line of vision, and no noise or confusion was heard or seen in any direction. A view to the left or of an approaching west-bound train could be had 600 feet from a point in the center of the highway, 15 feet east from the first rail of the switch track, and as one approached nearer the first rail of the switch track the view to the left materially increased. There was a view to the right of 150 feet from a point in the center of the highway 10 feet from the first rail of the switch track, and this point 10 feet from the first track is 50.7 feet from the first rail of the track upon which the accident happened. The distance between the first rail of the switch track and the east rail of the east-bound track is 40.7 feet. At a point in the center of the highway, 8½ feet from the first rail of the switch track, or 48½ feet from the first rail of the east-bound track, the view to the right of an approaching east-bound train is over 400 feet. At 7½ feet from the first rail of the switch track, or 47½ feet from the east rail of the east-bound track, the view to the right is more than 500 feet, and from this point in the highway the view of the tracks to the right increases very rapidly as the first rail of the switch track is approached. When upon the first rail of the switch track, there is a clear line of vision for 2,200 feet to the overhead bridge, and to a whistling post 1,235 feet north of the crossing located on the west side of the track.

The highest rate of speed of the train, as testified to by the witnesses, was 50 miles an hour. The testimony shows that the deceased passed over the crossing in a little less than six seconds. The train, running at 50 miles an hour, traveled in this six seconds a distance not to exceed 40 feet. So that, when the front wheels of the wagon driven by deceased came to the first rail of the switch track, the train was then less than 500 feet away, and his view at this point was over 1,200 feet to the right.

I believe there was ample evidence to sustain the finding that the defendant was guilty of negligence in the management of its business and trains at this crossing; but the difficulty is that the intestate was guilty of contributory negligence, and the verdict must be set aside, and the complaint dismissed.

There is evidence that the deceased looked before going upon the track, or when he was upon the tracks. If this is so, he could have seen the approaching train, for it was in plain sight, and it cannot be

claimed that he did not see it. Dolfini v. Erie, 178 N. Y. 1, 70. N. E. 68.

In O'Brien v. N. Y. C. & H. R. Ry., 129 App. Div. 288, 113 N. Y. Supp. 329, intestate was held to be guilty of contributory negligence as a matter of law, and the complaint was dismissed. There on a bright day, having passed two cars in the direction from which a rapidly moving train, visible to other persons, was coming, and notwithstanding he presumably saw the engine, he attempted to cross the track and was struck before he succeeded in doing so.

In McSweeney v. Erie Ry., 93 App. Div. 496, 87 N. Y. Supp. 836, complaint was dismissed because of negligence of intestate. There were no gates. Accident occurred during a heavy rainstorm accompanied by thunder. Top of buggy up with side curtains drawn. Stationary signals. Bell not ringing, but should ring when train was approaching 1,300 feet away, but out of order, and train running 50 or 60 miles an hour. No evidence that he looked and listened. Complaint dismissed.

In Coleman v. N. Y. C. & H. R. Ry., 98 App. Div. 349, 90 N. Y. Supp. 264, Id., 112 App. Div. 902, 98 N. Y. Supp. 1099, affirmed 188 N. Y. 564, 80 N. E. 1107, intestate riding a bicycle attempted to cross track when he reached the first track looked in both directions, then with head down started to cross tracks, four in number. On reaching fourth track, struck by passenger train going 30 miles an hour. Standing freight cars and engine were on the third track. The fourth track was clear, and the engine approaching 600 or 700 feet away. It was a clear day, and no noise except such as came from the engine on track 1, 60 feet away. Evidence established that he looked, and when he was 12 feet from the south-bound track, No. 4, he could have discovered the train. Held, that the evidence did not warrant a finding that the intestate was free from contributory negligence.

In Fisher v. Central Vermont Ry., 109 App. Div. 451, 95 N. Y. Supp. 693, plaintiff was struck by tender of engine at grade crossing, with which he was familiar. He crossed two tracks, and, coming to the third, his view was cut off by standing cars on the second track. He did not look until he stepped on the rail of the third track, when he was hit. He was carrying an umbrella to protect himself from the rain, which was falling. Held, there was contributory negligence which prevented a recovery.

In De Jong v. Erie Ry., 59 App. Div. 168, 69 N. Y. Supp. 78, plaintiff was driving over a crossing at 1 o'clock in the afternoon, on a bright clear day; and at a point in the highway within 150 feet of the crossing plaintiff could see down the track in the direction from which the train came 680 feet or more, if he had looked. He was familiar with the crossing, and, when 25 or 30 feet from the track, stopped his horses, looked and listened, and did not hear any signal or sound of the train, which he knew to be due about that time. He did not look again; but as his horse stepped upon the first track he saw the train approaching from behind a toolhouse 600 feet from the crossing. He then attempted to cross in advance of the train, although the track upon which the train was approaching

was 60 feet distant. It was held that the only inference from the facts was that the plaintiff either underestimated the speed of the train, or overestimated the speed of his horse; that, in any event, he knowingly exposed himself to the perils which he encountered, and a judgment in his favor was reversed.

In Wahler v. L. I. Ry., 137 App. Div. 17, 121 N. Y. Supp. 755, a person when 15 feet from a railroad crossing looked for trains, and he either saw a train and kept on his way, or he did not see it because he was negligent. He looked again and saw a train approaching when he was about to step upon the track, and he thought he could cross ahead of the train, and, when he found he could not cross, he tried to retrace his steps and was struck by the train. The gates were open when he first looked for a train. Held, that he was guilty of contributory negligence as a matter of law.

In May v. N. Y. C. & H. R. Ry., 137 App. Div. 7, 121 N. Y. Supp. 781, the circumstances were somewhat similar to the case at bar, and the intestate was held guilty of contributory negligence.

One 'crossing a railroad at grade, with the obvious danger that there is more or less at such crossings from approaching trains, should be alert to the dangers, and should concentrate his thoughts and ascertain if he can proceed safely. Common prudence dictates that at railroad crossings at grade the uppermost thought in a person's mind in attempting to make such crossing should be to look for oncoming trains. Said the learned Chief Justice Cullen, in Harrison v. N. Y. C. & H. R. Ry., 195 N. Y. 86, 90, 87 N. E. 804:

"Ordinarily, where a traveler seeks to cross a railroad, his dominant thought should be to see that he can proceed across safely, that there are no approaching trains, and to this case all other considerations should be subordinated."

In the case at bar, the evidence conclusively establishes that if the deceased, as he was about to drive upon the switch track over 40 feet from the east rail of the east-bound track upon which he was struck by the approaching train, had either looked or listened, he could have discovered the oncoming train. It is well known that a train going at a rate of speed the train in question was going as it approached the crossing makes a noise which could have been heard by the deceased if he had given attention, unless there were other noises in the vicinity which would have prevented him from hearing. The evidence shows there was nothing which would prevent intestate from hearing the noise of the approaching train had he listened, and there was nothing to prevent him from seeing the approaching train had he looked.

The obligation rested upon the deceased when approaching this crossing to exercise his faculties and to look and listen for approaching trains, and also to look intelligently and in such a manner that what his vision disclosed would influence his conduct. If he did not look intelligently with the line of vision clear, he did not look at all. The evidence wholly fails to point out any excuse on the part of the intestate for going from the east rail of the switch track and across the defendant's tracks and upon the track where collision occurred

without taking any precaution or any means of ascertaining whether or not it was safe for him to do so, and it is clear that if. he had looked and listened he would have discovered the approaching train and could have avoided the collision with it.

The intestate was guilty of contributory negligence, and the plaintiff cannot recover.

Motion to set aside the verdict and to dismiss the complaint granted.