CUNNINGHAM v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Fourth Department.    January 11, 1911.)

.RAILROADS (§ 348*)—ACCIDENTS AT HIGHWAY CROSSINGS—CONTRIBUTORY NEG-
   LIGENCE.
       In an action to recover for death of plaintiff's intestate at a railroad
   crossing, evidence *held* to show that her death was caused by her con-
   tributory negligence.
       [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1144–1149;
   Dec. Dig. § 348.*]

       Kruse, J., dissenting.

Appeal from Trial Term, Oswego County.
Action by R. James Cunningham, as administrator of the estate of
Jessie C. Cunningham, deceased, against the Delaware, Lackawanna &
Western Railroad Company.    From a judgment dismissing the com-
plaint, plaintiff appeals.    Affirmed.
Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
KRUSE, and ROBSON, JJ.

D. P. Morehouse, for appellant.
A. D. Jenney, for respondent.

ROBSON, J.    Plaintiff's intestate shortly before 9 o'clock on Jan-
uary 28, 1909, while driving northerly across defendant's track, was
struck and killed by the locomotive hauling defendant's west-bound
passenger train.    The highway on which decedent was driving was
practically level and apparently in good condition.    Defendant's tracks
cross this highway in a northwesterly and southeasterly direction.
The angle made by the line of the highway as decedent approached
the tracks with the line of defendant's tracks on which defendant's
train was moving was about 70 degrees, as is stated.    Due to this
angle, the train came somewhat from the rear of decedent, and, as
she was riding in a covered buggy with the top up and side curtains in
place, she could not readily look in the direction from which the train
approached without leaning forward and looking to the right around
the front of the carriage top.    It was broad daylight, and she was in full
possession of her faculties, accustomed to drive and manage horses,
and the horse she was driving was gentle and perfectly under her
control.    As she approached the crossing her view of a train approach-
ing from the east was obscured by buildings and trees in the angle be-
tween the highway and the track and also by fences and the rising
ground, the gradual upward slope of which began about 100 feet from
the crossing through which a cut for the track had been made; but,
after passing these obstructions and from a point at least 80 feet from
the track continuously until the track was reached, her view of an
approaching train was not materially interfered with except by the
rising ground and the fence of the cattle guard.    At 50 feet from the
crossing the tracks themselves are plainly visible for more than 500
feet in that direction, and the view rapidly enlarges from that point on.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

There is evidence that decedent looked to her right—i. e., in the direction from which the train was approaching—at a point more than 200 feet from the crossing, her head and shoulders being visible to the witness as she looked out around the buggy top. But at this point looking was unavailing because of the intervening obstructions, to which I have referred; and, besides, at that time the train, moving, as is claimed, at the rate of 60 miles an hour and she at the rate of 5 miles an hour, would have been more than 2,400 feet away. From that time on there is absolutely no evidence of any care or caution whatever on the part of decedent, though witnesses saw the rig as it approached the track almost continuously from that time on, and from a distance of 50 feet from the track a witness in a house on the other side of the track looking directly towards her as she approached the track says that she did not look, as he would have seen her if she had. The horse jogged along at the same slow trot from the time the rig was first seen until it crossed the tracks in safety, the locomotive striking the wagon and demolishing it. The horse was but slightly injured.

This seems to be a statement of the facts disclosed by the evidence as to what decedent did, or did not do, as she went towards the track, as favorable to plaintiff's claim that she was not guilty of contributory negligence as the evidence will warrant, either directly, or by legitimate inference therefrom, except for a further fact to which I will in a moment refer. If plaintiff's right to recover depended alone upon the facts above stated, there could scarcely be a question that absence of contributory negligence had not been established. To recapitulate: Her view to the right from the point where any view was possible was not materially obstructed. The approach of a train from the other direction was no disturbing factor as the track in that direction lay open to her view for at least half a mile, and the top of the buggy did not interfere with her view in that direction. There was no unusual circumstance or condition by way of passing trains, or crowds, or sounds preventing her hearing the approach of the train, or diverting her attention even momentarily from the fact that she was approaching this place of danger, and she was thoroughly familiar with the situation and surroundings. Having looked but once at a distance of more than 200 feet from the crossing at a point where she must have known she could see nothing of an approaching train, which would not have passed the crossing long before she could possibly reach it, and knowing that any train which would endanger her safety would necessarily then be not within her view, she proceeds steadily along without further act or effort to ascertain whether a train was coming and the accident followed.

The other fact upon which appellant relies as raising a question which it is claimed entitled him to have the question of decedent's contributory negligence passed upon by the jury is that the electric signal bell at the crossing was out of service at that time, and gave no warning of the approach of the train. It is claimed that, if this bell was not sounding its warning, that fact was an assurance that no train was approaching within the distance which the bell should if in

commission give warning of its approach—in this case something like half a mile. The fact that the bell did not sound was, of course, material to be considered, together with the other facts bearing upon the question whether decedent was in the exercise of reasonable care and caution when she attempted to cross the track. Even the fact that gates in the immediate charge of an operator were raised does not absolve a person crossing a railroad track upon which trains are operated from the exercise of some individual care and reasonable exercise of personal observation, dependent as to extent upon the circumstances. But these stationary signal bells are mechanical devices operating automatically and it is well known are not absolutely reliable, and their mechanism is liable to occasional disarrangement putting them temporarily, at least, out of service. We are not left to rely wholly upon the presumption that decedent knew and appreciated this fact, for her husband, who, as administrator, is the plaintiff in this action, testifies that he knew this bell did not operate on several prior occasions and that, in the presence of deceased, he several times spoke of it. The fact that such a bell is not ringing can at most be taken as indicating either one or two things—that no train is within the zone of its operation, or that it is itself out of commission. Its silence is therefore no affirmative assurance of safety to the traveler like the raising of crossing gates, or the invitation to proceed given by the crossing watchman. If plaintiff relied alone upon the assumption that because the warning bell was not sounding no train was approaching near enough to endanger her safety, and in that reliance went upon the track, she was guilty of contributory negligence. The evidence warrants no other inference than that she took no precaution either by looking or listening at a time when either would have availed to assure herself that a train was not approaching; and it follows that the nonsuit was properly granted. A case squarely in point is McSweeney v. Erie R. R. Co., 93 App. Div. 496, 87 N. Y. Supp. 836, which was the authority relied upon by the trial court. This extract from the opinion expresses my conclusion in the present case:

"To my mind the evidence indicates that the occupants of the buggy drove onto the crossing confident in their safety because of the silence of the stationary signal bell, and without the observance of that care which the law imposed upon them notwithstanding the omission of the signal."

This case was again followed in that department in Gowdey v. Erie R. R. Co., 113 App. Div. 913, 100 N. Y. Supp. 1119, which was an action brought by the administrator of the estate of the other occupant of the buggy, who lost his life in the same accident.

The case of Flannagan v. N. Y. C. & H. R. R. Co., 70 App. Div. 505, 75 N. Y. Supp. 225, a case in this department, is not at variance with the McSweeney Case.

Judgment and order affirmed, with costs. All concur, except KRUSE, J., who dissents.