ALVA J. FRENCH, Respondent, *v.* NEW YORK RAILWAYS CORPORATION, Appellant.

First Department, April 11, 1930.

*Henry J. Smith* of counsel [*Ambrose Clogher* with him on the brief], for the appellant.

*R. Randolph Hicks* of counsel [*Barent Ten Eyck* with him on the brief; *Thomas F. Compton*, attorney], for the respondent.

MERRELL, J. The action was brought by plaintiff to recover for personal injuries which she alleges she sustained by reason of the negligence of a motorman of the defendant, plaintiff claiming that, at the time she received the injuries for which she sues, she she was in the exercise of due care on her part. We are of the opinion, under the admitted facts as disclosed by the evidence, that plaintiff, at the time she received her injuries, was herself guilty of such negligence as precludes any recovery against the defendant. Briefly, the admitted facts are as follows: Plaintiff, on May 31, 1927, was thirty-one years of age and resided with her son, a lad thirteen years of age, at 69 West One Hundred and Ninth street, in the borough of Manhattan, New York city. The place where the plaintiff and her son resided was about seventy-eight feet easterly of the corner of Columbus avenue on the northerly side of One Hundred and Ninth street. Between Columbus avenue and Manhattan avenue to the east a two-track surface railway of the defendant runs. From Columbus avenue toward the east there is a sharp decline in the roadway. According to the testimony of plaintiff, at about four o'clock in the afternoon she left her place

of residence with her son and started to go to a moving picture theatre which was located at the southwest corner of Manhattan avenue and One Hundred and Ninth street. She testified that after leaving her home she walked easterly on the northerly sidewalk a distance of about fifteen or eighteen feet and then started diagonally to cross One Hundred and Ninth street in a southeasterly direction. Plaintiff knew at that time that the usual crossing place where people were expected to cross the street in order to reach the moving picture theatre was upon the crosswalk at the intersection of One Hundred and Ninth street and Manhattan avenue. Notwithstanding such knowledge, she started with her son to cross the street at a point nearly midway between Columbus avenue and Manhattan avenue, and she started to cross the street diagonally, walking in a southeasterly direction toward the moving picture theatre. She testified that at the time she reached the railway tracks of the defendant on One Hundred and Ninth street she was something over one hundred feet from the corner of Columbus avenue. Plaintiff testified that she at that time knew that trolley cars were accustomed to pass over the tracks on One Hundred and Ninth street, both toward the west and from the west, easterly. Plaintiff testified that before stepping from the curb and immediately as she stepped from the curb to the roadway in starting to cross One Hundred and Ninth street, she looked toward the east to see if there was any trolley car approaching from that direction, and saw none, and that she then looked toward the west and was able to see up One Hundred and Ninth street all of the way to Columbus avenue and partly around the corner, and that there was no trolley car or other moving vehicle in sight, and that she then proceeded in a southeasterly direction to cross One Hundred and Ninth street. She testified that she did not look again toward the west after leaving the curb, and that during her journey across the street her back or right shoulder was toward where the defendant's trolley car came from the west. Plaintiff testified that her son was about two feet ahead of her and at her right-hand side; that she crossed the northerly or west-bound track of the defendant's railway and upon the safety strip five feet in width between the west-bound and east-bound tracks, and that she realized she was in a position of safety as she was upon this strip. She testified that her first realization of danger was when she heard the gong of defendant's approaching trolley car from the west, and, looking up, saw the car upon her; that she screamed, but was unable to get across the track, and was struck and received the serious injuries for which she sues. Plaintiff testified that in her journey diagonally across the street she was proceeding in a southeasterly direction toward the picture theatre, and that at

that time she could not see to the west, unless she turned her head, and that she did not turn her head or look after she left the northerly curb of the street. There was nothing in the street to obstruct plaintiff's vision, had she turned her head and looked toward the west at any time after leaving the northerly curb of the street. As to her journey across the street, plaintiff testified: " Q. So you were just at the edge of the curb, just in the gutter and you looked west? A. Yes, sir. Q. And you could look west from there clear into Columbus Avenue? A. Yes. Q. And then you started to walk east — south and east? A. Southeast. Q. But from that time on, you never could see to the west of you? A. No. Q. And you did not see to the west of you? A. I did not. I did not think it was necessary. * * * Q. You did not look to the west? A. No. * * * Q. And you knew, after you crossed the first track, that you had then crossed the tracks upon which cars came west, did you not? A. Yes. Q. And you knew when you went into the place between the east bound and west bound tracks, that you were in a space where cars did not operate, didn't you? A. Yes. Q. You know that there is a space of about five feet between the two tracks? A. Yes, sir. Q. And you knew then that there were no cars would operate there, didn't you. A. Yes, sir. Q. You knew you were safe? A. Yes. Q. And then as you were walking with your back toward the west, and not able to see toward the west, you continued on to the eastbound track, did you? A. Yes, sir. Q. Went right on looking southeast, not looking to the west? A. Yes. Q. Continued right on to that car track and you knew that trolley cars operated on that car track, didn't you? A. Yes. Q. You walked right on. And you knew that you were down in the middle of the block, didn't you? A. I was not in the middle of the block, I was more toward the west corner. Q. You knew you were pretty near the middle of the block? A. Well, pretty near it."

Plaintiff's testimony very clearly shows that as she was crossing the street she was giving little heed to the possible approach from the west of trolley cars upon the defendant's track. Plaintiff, on cross-examination, was asked: " Q. You continued on, without observing to the west, did you not? A. Yes, after I left the sidewalk. Q. You did? Went right on to the trolley track without looking to the west? A. Yes, sir. * * * Q. You knew you were going onto the tracks? A. Absolutely, yes, sir. Q. You knew you could look if you wanted to, didn't you? A. Yes, sir. Q. And you did not look? A. I saw no reason to look. * * * Q. You were mindful of the fact that trolleys run there, weren't you? A. Yes. I knew trolleys run there. Q. And you did not have your mind on anything else? A. No. Q. Your attention was not drawn away anywhere else? A. No, sir. Q. And you were walk-

ing with your back toward the west, so that you could not see the trolley car? A. Well, my shoulder; I would not call it my back. Q. Your shoulder? Well, you could not look to the west at all? A. I could look. Q. As you were going — you could look? A. I could, if I had turned my head? Q. But you did not turn your head? A. I did not, no. Q. You walked right along, without turning your head? A. Yes. Q. And the first thing you knew was when the trolley car was right where you were? A. Yes, sir."

The evidence thus clearly discloses that the plaintiff attempted to cross the defendant's tracks in utter disregard of her surroundings and without exercising her faculties for her own protection. According to the testimony of plaintiff, when she stepped upon the defendant's tracks, the defendant's trolley car, which afterwards struck her, could have been but a short distance to the west. The only precaution that the plaintiff claims she took was her glance toward the west at the time of leaving the northerly curb of the street. While plaintiff testifies that she looked on leaving the curb and saw no car on the defendant's east-bound track, she knew that street cars came around the corner from Columbus avenue into One Hundred and Ninth street, and she knew she was crossing the defendant's tracks. Notwithstanding such knowledge, the evidence shows that she walked diagonally in a southeasterly direction, not at a regular crossing, but midway in the block, without looking or taking any heed of approaching danger. Under such circumstances, we are of the opinion that the plaintiff must be held to have been guilty of contributory negligence as matter of law, and that her lack of care for her own protection precludes any recovery of damages for the injuries which she sustained. The facts in the case at bar are not unlike those in *Ford* v. *N. Y. City Interborough R. Co.* (236 N. Y. 346), in which case the Court of Appeals held the plaintiff, under quite similar circumstances, to have been guilty of contributory negligence, precluding any recovery for damages sustained. In that case Chief Judge Hiscock, writing for the Court of Appeals, stated (at p. 349): " She then traveled a short distance southerly towards One Hundred and Seventy-seventh street and then, in the middle of the block, started across the street turning somewhat obliquely towards the south. As she first reached the sidewalk as above stated she saw the car which subsequently injured her somewhat south of One Hundred and Seventy-ninth street and approaching the point of accident. She only looked at the car once more before going upon the track where she was struck. In her direct examination she stated she thus looked after she had passed from the sidewalk to the pavement but does not otherwise disclose where this point of observation was. In her cross-examination she states that she made this observation

before she left the sidewalk. In both accounts she states that the car was then distant about 160 feet from the point of collision and that although she appreciated that it was approaching the point where she attempted to cross the track she did not look again to ascertain its whereabouts.

" The evidence both of the defendant's witnesses and of plaintiff's own witness is to the effect that at the time she stepped on the track the car was only five or ten feet distant from her and her witness states that it was moving ' quickly,' while the defendant's witnesses state that it was moving at the rate of about nine miles an hour. In other words, the plaintiff, crossing in the middle of a block and knowing that a car was approaching, stepped upon the track without any attempt to ascertain whether it was safe for her to do so. If her last observation was made before she left the sidewalk her failure to look again was clearly negligent. (*Lofsten* v. *Brooklyn Hts. R. R. Co.*, 184 N. Y. 148.) Also, under the circumstances, if she looked from some undesignated point in the street and, seeing a car distant only 160 feet and approaching ' quickly ' or at the rate of nine miles an hour, proceeded on her way without further observation and stepped upon the track when the car was only distant a few feet, we think that she was lacking in that reasonable prudence which the law requires of her."

The facts, as hereinbefore outlined, were uncontradicted and appear from the testimony of the plaintiff herself. In *Fowler* v. *N. Y. C. & H. R. R. R. Co.* (74 Hun, 141, 144), cited with approval in *Coleman* v. *N. Y. C. & H. R. R. R. Co.* (98 App. Div. 349), the court said: " The duty of looking and listening when one approaches * * * tracks does not seem to me to be adequately discharged by merely looking as the dangerous point is approached, and then when it is absolutely reached going blindly forward."

In the case of *Lofsten* v. *Brooklyn Heights R. R. Co.* (184 N. Y. 148) the plaintiff was shown to have looked as he left the curb and to have observed a street car approaching at some distance and then started to cross. The Court of Appeals in that case wrote: " From the time plaintiff left the curb to the instant of the collision he never looked at or in the direction of the approaching car, or by any other method so far as appears took the slightest pains to ascertain where it was until a shout called his attention to it and looking up he saw it upon him.

" Without any lengthy discussion of the principles applicable to these facts, we think it is clear that the plaintiff did not exercise ordinary prudence. The mere statement of his conduct impresses the mind at once that in utter disregard of all precautions he placed himself in front of defendant's car."

In the case at bar it is true the plaintiff saw no car, but she

admitted that she knew cars were accustomed to run on the east-bound track, and that they turned from Columbus avenue into One Hundred and Ninth street and then at a sharp down grade proceeded easterly. She knew that a car was apt to come at any time from the west, and yet, with such knowledge and without looking, excepting when she started to cross the street diagonally, she proceeded, with her back toward the west, upon the defendant's tracks, without giving further thought of her safety. The Court of Appeals in *Ford* v. *N. Y. City Interborough R. Co.* (*supra*) stated: "If her last observation was made before she left the sidewalk her failure to look again was clearly negligent."

In *Neuman* v. *Union Railway Co.* (243 N. Y. 249), Chief Judge HISCOCK, writing for the Court of Appeals, said (at p. 254): "If this is the correct theory, that intestate backed or stepped from a position of safety upon his automobile in front of a car in plain sight, moving at the rate of twenty miles an hour and distant only a few feet, it appears to be too clear to be debatable that he was negligent. He was presumably *familiar* with *car* and *track conditions* at the *point of the accident* and *knew the direction from which* a car *was to be expected* on the track where he was struck. *If he backed down* upon the track in front of the car *without looking* he was oblivious of his duties. *If he looked and saw* and still placed himself in a position of danger *he was*, if anything, *still more oblivious* because then, intention took the place of inadvertence." (Italics are the writer's.)

In the case at bar not only was there a presumption that plaintiff, residing on the street, was familiar with the track conditions at the point of the accident, but she frankly testified that she knew that cars frequently passed over the track coming from Columbus avenue from the west. She knew that at any time a car might be expected to come upon her from the west.

In our opinion the plaintiff here, by her own version, has shown herself to have been guilty of such negligence as must defeat any recovery of damages. With full knowledge that she was leaving a place of safety and adopting an unsafe manner of crossing the street, she testified that she did not consider it necessary to turn her head or glance toward the west, from which she knew a car might at any time come. The evidence shows that plaintiff heedlessly placed herself in a position of danger and gave no thought whatever for her safety. Under such circumstances, we think the judgment appealed from should be reversed, with costs, and the complaint dismissed, with costs.

DOWLING, P. J., McAVOY, O'MALLEY and SHERMAN, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.